# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMANDO LEYVA, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | No. 04-cv-3697 |
| : | |
| ANTONIO WILLIAMS, et al. : | |
| : | |
| Respondents. : | |

**November 23, 2009**  **Anita B. Brody, J.**

## MEMORANDUM

Armando Leyva ("Leyva" or "Petitioner") petitions this Court for a Federal Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. I will deny the petition.

**I.  BACKGROUND**

On July 21, 1999, Leyva was tried before Judge Anthony J. DeFino in Philadelphia's Court of Common Pleas on charges of involuntary deviate sexual intercourse, statutory sexual assault, corruption of a minor, indecent exposure, and indecent assault. The victim, L.B., was fourteen years old when the alleged events occurred. At the end of the trial, Judge DeFino found Leyva guilty of statutory sexual assault and corruption of a minor, in violation of 18 Pa. C.S.A. §§ 3122.1 and 6301. Leyva was sentenced to eleven and one-half to twenty-three months imprisonment, followed by three years probation.

Represented by new counsel, Leyva sought direct and collateral state court review of his conviction, fully exhausting all of the claims he presents here. On August 5, 2004, Leyva filed

1

the instant petition for Writ of Habeas Corpus.  His petition raised five grounds for relief:

>   (1) Trial counsel was ineffective because he (a) failed to withdraw in order to testify about the efforts of L.B.'s mother to obtain $5,000 from Leyva in exchange for dropping all the charges against him, and (b) failed to call L.B.'s mother as an adverse witness.
>
>   (2) Trial counsel was ineffective for (a) failing to withdraw his representation in order to testify after L.B. stated at trial that she was pressured by trial counsel to drop the charges against Lopez, and (b) having a conflict of interest because he previously represented Lopez.
>
>   (3) Trial counsel was ineffective and had a conflict of interest because he failed to present evidence that L.B.'s mother was motivated to lie (and to pressure her daughter to lie) because she was cooperating with the government in an unrelated case.
>
>   (4) Trial counsel was ineffective for failing to request evidence of L.B.'s mother's cooperation agreement with the government in an unrelated case. Moreover, the government's failure to turn over this evidence rendered his conviction unconstitutional.
>
>   (5) Trial counsel was ineffective for failing to introduce evidence about L.B.'s previous accusation against Jose Rojas.

Leyva v. Williams, et al., 504 F.3d 357, 362 (3d Cir. 2007).  Leyva's fourth claim also alleged that the prosecution violated its obligation to turn over L.B.'s journal to the defense.  On August 12, 2004, I referred the case to Magistrate Judge Caracappa.  She issued a Report and Recommendation on March 2, 2005 (the "First R&R").  She recommended that claim 1(a) was procedurally defaulted because Leyva failed to comply with a Pennsylvania rule that requires missing witnesses to submit affidavits showing their availability and willingness to testify.  She recommended that claims 1(b), 2(a), 3, and 4 were procedurally defaulted because Leyva failed to comply with a provision of the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541, *et seq*., that requires the petitioner to be "currently serving a sentence of imprisonment, probation or parole for the crime."  42 Pa. C.S. § 9543(a)(1)(i).  Magistrate Judge Caracappa recommended

2

that I deny claims 2(b) and 5 on the merits. Leyva failed to object and, on March 30, 2005, I adopted and approved the First R&R. Leyva then appealed to the Third Circuit. The Third Circuit vacated the dismissal of claims 1(a), 1(b), 2(a), 3, and 4, writing:

> First, Leyva's failure to submit an affidavit to establish that his trial counsel or the complainant's mother were available and willing to testify does not result in procedural default of claim 1, because an affidavit requirement is not an "adequate" state ground. Second, Leyva's failure to comply with Pennsylvania's custody requirement does not bar review of claims 2(a), 3, and 4, because Leyva's noncompliance with this requirement did not result from any failure on his part. Finally, we agree with the government that claim 2(b), concerning trial counsel's prior representation of Wilfredo Lopez, was properly denied by the Magistrate Judge on the merits.

Leyva, 504 F.3d at 365. On December 11, 2007, I referred the matter to Magistrate Judge Caracappa for a Report and Recommendation on Leyva's remaining claims (the "Second R&R"). After an evidentiary hearing on September 30, 2008, Judge Caracappa recommended that I dismiss all of Leyva's claims. On June 10, 2009, Leyva filed the following objections to the Second R&R:

- Trial counsel provided ineffective assistance of counsel because he failed to withdraw to testify that the complainant's mother offered to drop the charges in exchange for $5,000 (claim 1(a)),

- Trial counsel provided ineffective assistance of counsel because he failed to withdraw to testify about the complainant's statement to him that her prior allegations of sexual assault against another man were false and made at the behest of her mother (claim 2(a)),

- The Commonwealth violated its Brady obligations by failing to provide the defendant with a copy of the cooperation plea agreement the Commonwealth

3

>   entered into with the complainant's mother in an unrelated homicide case (claim
>
>   4), and
>
> • The Commonwealth violated its Brady obligations by failing to provide the
>
>   defendant with a copy of the complainant's missing journal (claim 4).¹

## II.  STANDARD OF REVIEW

A district court reviews *de novo* "those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). See also Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. A district court, however, "may not reject a finding of fact by a magistrate judge without an evidentiary hearing, where the finding is based on the credibility of a witness testifying before the magistrate judge." Hill v. Beyer, 62 F.3d 474, 482 (3d Cir. 1995).

Any determinations of factual issues made by a state court are presumed to be correct. 28 U.S.C. § 2254(e). State courts are also entitled to deference with respect to their legal conclusions. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "the state court's decision must stand unless it is 'contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Lam v. Kelchner, 304 F.3d 256, 263 (3d Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)). A state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court

---

¹ Claims 1(b) and 3 also remained pending after the Third Circuit's opinion. Leyva failed to object, however, to Magistrate Judge Caracappa's recommendation in the Second R&R that I deny those claims. I approve and adopt Magistrate Judge Caracappa's recommendation that I deny claim 3. I further discuss claim 1(b) in footnote 6.

confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). An unreasonable application of law occurs when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. In this case, the state courts never addressed Leyva's current claims on the merits. Thus, I do so in the first instance here.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

After conducting an evidentiary hearing on November 9, 2009, I make the following findings of fact and conclusions of law:

### A. Ineffective Assistance of Counsel

Leyva makes two claims based on ineffective assistance of counsel. Both claims argue that Charles Peruto, Jr. ("Peruto"), Leyva's trial attorney, should have withdrawn from representing Leyva so that Peruto could have testified at trial. First, Leyva argues that Judge Caracappa should have found that Peruto was ineffective because he failed to withdraw to testify about the complainant's statement to him that her allegations of sexual assault against another man in another case were false and that she made them at her mother's direction (claim 2(a)). Second, Leyva argues that Judge Caracappa erred by failing to find that Peruto should have withdrawn so that he could have testified that the complainant's mother offered to drop the charges against Leyva in exchange for $5,000 (claim 1(a)).

**1. Findings of Fact**

At trial, the complaining witness, L.B., testified that when she was fourteen years old, she and Leyva engaged in a consensual sexual relationship that lasted for six months. Leyva, who was over thirty years old when the events allegedly occurred, claimed that he never engaged in any sexual conduct with L.B. As L.B. was the only witness to the sexual acts, her credibility was one of the key issues at trial.

Peruto attempted to demonstrate L.B.'s lack of credibility by cross-examining her about a prior allegation of sexual assault that L.B. made against Wilfredo Lopez ("Lopez"), her mother's former boyfriend. Peruto had special knowledge about L.B.'s allegations of sexual assault against Lopez because Peruto represented Lopez in connection with those charges. L.B. eventually recanted the allegations against Lopez under oath at an unrelated court proceeding, and the charges were dropped. During Leyva's trial, Peruto successfully demonstrated that L.B. had previously lied under oath:

> Q: Did you ever lie under oath?
>
> A: Yes.
>
> Q: Would it be a fair statement that you went back with the Judge, the court reporter and you and no one else was present and what you told the Judge under oath was a lie?
>
> A: Yes.
>
> . . .
>
> Q: You made an accusation against Wilfredo Lopez regardless of what it was?
>
> A: Yes.

> Q: And then you went into court and said you made the whole thing up; right?
>
> A: Yes.

(Trial Tr. 47-50.)[2] L.B. testified, however, that her original accusation against Lopez was truthful, and that it was her recantation that was false. (See Trial Tr. 63.) Peruto had reason to believe this was untrue because, in the course of his representation of Lopez, Peruto held a meeting with Lopez, L.B., and L.B.'s mother, Cecilia Reyes ("Reyes"), during which L.B. told Peruto that her allegations against Lopez were false. Specifically, L.B. told him that she fabricated the charges against Lopez because her "mother put her up to it." (Hr'g Tr. 38.) At trial, Peruto attempted to cross-examine L.B. about that statement:

> Q: And did you tell me in my office what you said about Freddie [Lopez] was falsely--
>
> A: I don't know what I said. All I recall is you knew what he was charged with. You knew. And you told me to drop the charges. That's all I remember.
>
> Q: I told you to drop the charges?
>
> A: You told me to say nothing happened, so that's exactly what I did.
>
> Q: What did you tell me before I told you that?
>
> A: I don't recall what happened - - when I went to your office, I don't remember.
>
> Q: How is it that you could recall what I said but you can't recall what you said?
>
> A: Because what you said is what happened later on. Now I did go to court and I did do that.

---

[2] All references to testimony at the July 21, 1999 trial are cited as "Trial Tr." References to statements made at the September 16, 1999 sentencing are cited as "Sentencing Tr." References to testimony at the November 9, 2009 evidentiary hearing are cited as "Hr'g Tr."

7

(Trial Tr. 67-68.) L.B. never admitted during Leyva's trial that she falsely accused Lopez. Peruto could have withdrawn from representing Leyva in order to testify that L.B. told him that the allegations against Lopez were false. Nonetheless, Peruto, who had appeared before Judge DeFino on many prior occasions, thought his testimony was unnecessary because Judge DeFino had already discredited L.B's testimony on that subject. (Hr'g Tr. 71-73.) Further, Peruto thought that the cross-examination was successful overall because Judge DeFino heard that L.B. made an accusation of a similar nature in the past, that she later recanted. (See Hr'g Tr. 71.)

In addition to challenging L.B.'s credibility, Peruto sought to demonstrate Reyes's influence on L.B. For example, Peruto introduced evidence that on June 26, 1998, in a police interview conducted during the investigation of Leyva, L.B. was asked if she wanted to press charges against Leyva. She answered: "I don't want to but my mother told me to. Its stupid [sic]. She wouldn't let me press charges against her boyfriend who I don't like, but she wants me to press charges against someone I like." Thus, although Reyes never testified, her motives for influencing her daughter to press charges against Leyva were relevant.

One of Reyes's potential motives for pressuring her daughter to accuse Leyva was money. At the November 9, 2009 evidentiary hearing, both Leyva and Martha Franco ("Franco"), Leyva's girlfriend at the time of trial and his current wife, testified about a meeting, held just before trial, attended by Peruto, Leyva, Franco, and Jesse Bermudez, a character witness for Leyva. (Hr'g Tr. 82-83, 87-88.) They testified that, at this meeting, Peruto indicated that Reyes offered to drop the charges against Leyva in exchange for $5,000.

Peruto had no recollection of Reyes offering to drop the charges in exchange for money in the Leyva action. Nonetheless, Peruto did remember "the amount of $5,000." (Hr'g Tr. 41.)

8

Peruto thought that the $5,000 was in connection with the Lopez action. (See Hr'g Tr. 42 ("I think, if memory serves me correctly, that the way Cecelia Reyes put it was that Wilfredo Lopez, the defendant in that case, owed her $5,000, and that now he had paid it, and therefore they were gonna tell the truth that it didn't happen.").) However, he was unable to "say 100 percent either way" whether the $5,000 offer was related to the Leyva or Lopez action. (Hr'g Tr. 42.) Peruto also testified that he had a good faith basis for asking L.B. at trial, "To your knowledge, did anyone ask for any monies for you to drop the case against this man?" (Hr'g Tr. 40.)

I find that Peruto's testimony at the November 9, 2009 evidentiary hearing and his cross-examination of L.B. at trial tend to credit Leyva and Franco's account of the meeting where Peruto relayed Reyes's $5,000 offer. Thus, I find that, if Peruto had withdrawn from representing Leyva, he could have testified that Reyes told him she would drop the charges against Leyva in exchange for $5,000.

**2. Conclusions of law**

A claim for ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Judicial scrutiny of trial counsel's performance is "highly deferential." Id. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

9

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The "reasonable probability" standard requires less than a preponderance of the evidence. See Hummel v. Rosemeyer, 564 F.3d 290, 304 (3d Cir. 2009).

*a. Failure to withdraw in order to testify about L.B.'s statement (claim 2(a))*

Leyva contends that Peruto should have withdrawn from representation so that Peruto could have testified that L.B. told him that her allegations against Lopez were false and that she made them at her mother's direction. In particular, Leyva argues that evidence of L.B.'s perjury was insufficient to discredit her testimony because L.B. testified that her accusation against Lopez was truthful, and that she recanted it only because she was afraid. Leyva argues that this testimony increased sympathy for L.B., rather than damaging her credibility.

Strickland instructs that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (internal quotation omitted). Leyva has failed to demonstrate that Peruto's actions were outside the wide range of reasonable professional assistance. In Peruto's view, it was unnecessary for him to withdraw and testify because he had already (1) established that L.B. previously made similar accusations against another man, that she later recanted under oath and (2) successfully demonstrated that L.B.'s testimony that Peruto pressured her into withdrawing truthful charges against Lopez should be discredited.

Peruto's decision to continue representing Leyva was a "strategic choice[] made after

10

thorough investigation of law and facts" that is " virtually unchallengeable." Strickland, 466 U.S. at 690. Courts should avoid "illegitimate second-guessing of counsel's strategic decisions" and it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Peruto believed that he had already discredited the victim's testimony. Judge DeFino was well aware that L.B. had previously lied under oath, and Peruto reasonably believed that his cross-examination of L.B. demonstrated that she was lying about the meeting in Peruto's office. Given that Peruto thought he had made his point with respect to L.B.'s credibility, and considering the potential drawback to his client from withdrawing in the middle of trial, Peruto's decision to continue to represent Leyva was a reasonable trial strategy. Thus, I deny Leyva's petition for Writ of Habeas Corpus with respect to his claim that trial counsel was ineffective for failing to withdraw to testify about L.B.'s prior statements.

*b. Failure to withdraw to testify about Reyes's $5,000 offer (claim 1(a))*

Peruto's actions fell outside the wide range of reasonable professional assistance when he failed to withdraw to testify about Reyes's offer to drop the charges in exchange for $5,000.[3] In the context of Leyva's trial, Reyes's offer to drop the charges in exchange for $5,000 was clearly

---

[3] Although I found Leyva and Franco credible when they testified that Peruto told them Reyes offered to drop the charges in exchange for $5,000, I note that Peruto's actions were equally inappropriate if I accept Peruto's recollection of events. Even if I were to credit Peruto's testimony that Reyes's $5,000 offer was in connection with the Lopez matter, I would still find that Peruto provided ineffective assistance of counsel. Peruto's testimony about Reyes's motives in pressuring her daughter to bring charges against Lopez is relevant to Reyes's motives for influencing L.B. to bring charges against Leyva, and to the credibility of L.B.'s testimony.

relevant information.[4]  Peruto's theory of the case was that Reyes pressured her daughter to fabricate charges against Leyva.  L.B.'s own statements provided strong evidence that L.B. was acting at her mother's direction.  Evidence pertaining to Reyes's motives for pressuring her daughter was thus relevant.  Because of the absence of Peruto's testimony, Judge DeFino was unaware during trial of the $5,000 offer.

To overcome the presumption that trial counsel acted pursuant to a sound trial strategy, Leyva must show either that:

> (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy. . . In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct.

Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005).  Neither trial counsel nor the Commonwealth was able to articulate a possible strategic justification to excuse Peruto's failure to testify.  Given the evidence that Reyes had significant control over her daughter's actions and the absence of any potentially negative consequences from Peruto's testimony regarding Reyes's offer, trial counsel's failure to withdraw was objectively unreasonable.  Peruto's actions deprived his client of testimony that (1) would further suggest that L.B. was lying and (2) provide an explanation for why L.B. might falsely accuse Leyva.  The trial record was devoid of any rationale for why Reyes might pressure her daughter to lie; a reasonable attorney would have

---

[4] Of course, it is the prosecutor, rather than the victim's mother, who controls whether charges are dropped.  Reyes's offer remains relevant, however, because it provides additional information about her motives.  Moreover, as a practical matter, if L.B. were unwilling to testify against Leyva, the prosecutor would have significant difficulty proceeding.

12

sought to admit such evidence. Thus, I find that counsel's performance was outside the range of reasonable professional assistance.

In addition to demonstrating a deficient performance, a petitioner seeking relief on an ineffective assistance of counsel claim must also establish prejudice. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As the Supreme Court recently affirmed, Strickland "places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." Wong v. Belmontes, 558 U.S. ___, No. 08-1263, slip op. at 13 (Nov. 16, 2009) (per curiam). Leyva failed to establish a reasonable probability that, had Peruto testified about the $5,000 offer, the result of the proceeding would have been different. The most compelling evidence that the outcome would have been the same comes from an opinion that Judge DeFino wrote pursuant to Pennsylvania Rule of Appellate Procedure 1925 (the "Rule 1925 Opinion"), where he addressed the claims Leyva raised on direct appeal. With respect to Reyes's offer to drop the charges in exchange for $5,000, Judge DeFino wrote:

> Appellate counsel posits that trial counsel should have withdrew from the case and further that trial counsel was ineffective for not withdrawing from the case because he could have testified, if he was not the lawyer on the case, that the complainant's mother had spoken to him and indicated that she was willing to accept $5,000.00 to drop the charges; and because trial counsel had previously represented Wilfredo Lopez in an unrelated matter involving the complainant. Although these claims may be professional responsibility violations they would not have affected the course of the trial.

The trial court judge who was the actual factfinder in this case indicated that, even if he had been

13

aware of the $5,000 offer, his verdict would have been the same.[5] Moreover, the fact that Reyes

---

[5] The Third Circuit also relied on a portion of the Rule 1925 Opinion to determine whether Leyva demonstrated prejudice sufficient to excuse a procedural default. It wrote:

> Moreover, Leyva can sufficiently show the prejudice needed to excuse a procedural default. [Slutzker v. Johnson, 393 F.3d 373, 380-81 (3d Cir. 2004)]. The very same judge who found Leyva guilty of statutory sexual assault and corruption of a minor later concluded that his ineffective assistance claims warranted a new trial. Thus, if Leyva can establish that his trial counsel was ineffective, that conclusion would be enough to warrant a new trial. In this situation, it would be prejudicial to deny Leyva consideration of his ineffective assistance claims on the merits. Cf. Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000) ("In the context of an ineffective assistance claim, we have stated that prejudice occurs where 'there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.'") (quoting Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir.1996)).

Leyva, 504 F.3d at 369. This paragraph does not govern the merits of Leyva's ineffective assistance of counsel claim with respect to his testimony about Reyes's $5,000 offer. First, the Third Circuit wrote this paragraph while examining whether claims 2(a), 3, and 4 were procedurally defaulted. This paragraph is thus inapplicable to claim 1(a), which relates to Reyes's offer to drop the charges in exchange for $5,000. Second, I read this paragraph as limited to discussing prejudice in the procedural default context, rather than as an opinion on the merits of any of Leyva's claims. The Third Circuit clearly noted that "the merits of these claims have not been briefed or argued before us." Id. at 370. Further, the Third Circuit's discussion of whether there was "cause and prejudice" to excuse a procedural default was merely an alternative holding expressed as dicta. The Third Circuit never needed to address the "cause and prejudice" issue, because it had already found that Leyva's claims were not procedurally defaulted. See id. at 369 ("Noncompliance with Pennsylvania's custody requirement did not result from any *failure* on the part Leyva [sic], but simply from the expiration of his sentence . . . we have previously declined to treat a petitioner's failure to comply with Pennsylvania's custody requirement as a basis for procedural default"). The Third Circuit began its discussion of whether Leyva demonstrated cause and prejudice by writing, "Even if there had been a default . . ." Id.

Examining the Rule 1925 Opinion, I find that it demonstrates a lack of prejudice with respect to the particular ineffective assistance of counsel claim Leyva raises here. When Judge DeFino wrote "a new trial is warranted," he was discussing Leyva's ineffective assistance of counsel claims on direct appeal. Those claims, however, related to Peruto's failure to file a Rape Shield Law motion regarding the complainant's prior accusations against other men and for failing to call witnesses (other than Peruto himself) who would testify about L.B.'s prior accusations against Lopez and Reyes's $5,000 offer. Judge DeFino addressed the argument that Peruto should have withdrawn so that he could testify about Reyes's $5,000 offer under the

14

offered to drop the charges against Leyva is far from conclusive proof that the sexual acts never occurred. It is entirely possible that Reyes would have made the very same offer even if the allegations were true.

Leyva argues that the $5,000 offer tends to show that Reyes engaged in a pattern of extortion by directing her daughter to make false allegations against men, and then offering to drop them in exchange for money. While this is evidence that trial counsel should have sought to admit, it is unlikely that it would have shaken Judge DeFino's firm conviction that L.B. was telling the truth. (See Sentencing Tr. 6, 11-12 ("That young lady didn't make that story up. If she would have made that story up, she would have made it so that he would have gotten in serious trouble.").) Overall, it is clear that, after carefully considering L.B.'s credibility, Judge DeFino believed that her testimony against Leyva was accurate and truthful. Leyva failed to establish that there is a reasonable probability that Peruto's testimony would have changed Judge DeFino's view of L.B.'s credibility. This is an especially difficult burden given that Judge DeFino himself wrote that he would have reached the same verdict. Thus, Leyva cannot demonstrate a reasonable probability that, had Peruto testified about the $5,000 offer, the outcome would have been different.[6]

---

heading "conflict of interest." That portion of the Rule 1925 Opinion is directly on point; I rely on the "conflict of interest" section of the Rule 1925 Opinion and my own assessment of the likely impact of Peruto's testimony to evaluate whether Leyva has established prejudice.

[6] Leyva fails to object to Magistrate Judge Caracappa's recommendation in the Second R&R that I deny Leyva's claim that trial counsel was ineffective because he failed to call L.B.'s mother as an adverse witness to testify about the $5,000 offer (claim 1(b)). I cannot approve the Second R&R with respect to claim 1(b) because, unlike Magistrate Judge Caracappa, I find that Reyes did offer to drop the charges in exchange for $5,000. Nonetheless, for the same reasons that I discuss with respect to claim 1(a), Leyva has failed to establish that he was prejudiced by trial counsel's failure to call Reyes as an adverse witness.

**B. Brady Violations**

Leyva also objects to the Report and Recommendation by arguing that Judge Caracappa erred in concluding that the Commonwealth met its obligations under Brady v. Maryland, 373 U.S. 83 (1963). A Brady violation has three components: (1) the evidence at issue must be favorable to the defendant, (2) the evidence must be material, and (3) the evidence must have been suppressed by the prosecution. United States v. Reyeros, 537 F.3d 270, 281 (3d Cir. 2008). Leyva argues that the Commonwealth made two Brady violations. First, he argues that the Commonwealth was obligated to turn over to the defense the cooperation plea agreement the Commonwealth entered into with the complainant's mother (claim 4). Second, he argues that the Commonwealth should have turned over L.B.'s journal (claim 4).

**1. The Cooperation Agreement (claim 4)**

*a. Findings of Fact*

Lopez, Reyes's former boyfriend, was arrested for an unrelated homicide that allegedly took place on January 2, 1999. In connection with this homicide, Reyes, L.B.'s mother, was charged with murder and conspiracy. On July 16, 1999, just five days before Leyva's trial began, Reyes entered into a cooperation agreement with the Commonwealth with respect to the homicide charges (the "Cooperation Agreement"). Reyes pled guilty to a charge of hindering apprehension or prosecution, in violation of 18 Pa. C.S.A. § 5105, and agreed to cooperate with the government in exchange for a reduced sentence of Accelerated Rehabilitative Disposition ("ARD"). The Commonwealth failed to turn over the Cooperation Agreement to the defense. Reyes never testified at Leyva's trial.

### b. Conclusions of Law

Even if the Cooperation Agreement was favorable to the defendant and the Cooperation Agreement was suppressed by the prosecution, Leyva's Brady claim cannot succeed because he failed to establish that the Cooperation Agreement was material. See Reyeros, 537 F.3d at 281. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). As in the ineffective assistance of counsel context, a reasonable probability "is a probability sufficient to undermine confidence in the outcome." Id.

As Reyes failed to testify at trial, Peruto would have been unable to use the Cooperation Agreement to impeach Reyes directly. Instead, he would have had to argue that the Cooperation Agreement made it more likely that L.B. would falsely accuse Leyva. It is extremely unlikely that Peruto would have had success with this argument. The Cooperation Agreement was executed on July 16, 1999. The related homicide took place on January 2, 1999. Reyes contacted the police with allegations against Leyva by June 26, 1998. While it is clear that Reyes influenced L.B.'s willingness to testify against Leyva, it is illogical to argue that Reyes and L.B. fabricated charges against Leyva in June 1998, so that Reyes would be eligible for a better plea in July 1999.

At best, the Cooperation Agreement would have provided a reason for Reyes to pressure L.B. to testify against Leyva. But the Cooperation Agreement would not have erased whatever Reyes's motives for pressuring L.B. were during the six months before the murder took place, or year before Reyes actually entered into the agreement. A factfinder would be extremely unlikely to believe that the Cooperation Agreement had any influence on the degree of pressure Reyes

17

placed on L.B. Moreover, Judge DeFino clearly believed that L.B. was telling the truth when she testified, despite evidence that Reyes influenced L.B.'s testimony. Evidence regarding Reyes's motives for that influence was unlikely to change Judge DeFino's decision on the real issue: whether L.B.'s allegations against Leyva were true. The Cooperation Agreement would thus have little, if any, impact on the factfinder's view of L.B.'s credibility. Therefore, I deny Leyva's petition for Writ of Habeas Corpus with respect to his Brady claim regarding the Cooperation Agreement.

### 2. The Journal (claim 4)

Petitioner also alleges that the Commonwealth violated his constitutional rights by failing to turn over the victim's journal, where the victim supposedly recorded information about her sexual encounters with Leyva. According to the prosecutor, Reyes claimed that the journal was in her car when the car was towed by homicide detectives investigating the January 2, 1999 murder. A prosecutor is responsible for any favorable evidence known to others, including the police, acting on the government's behalf. See Reyeros, 537 F.3d at 281. Leyva failed to establish, however, that the police ever had custody of the journal. The Commonwealth cannot have "suppressed" evidence that it never saw and was unable to obtain. Thus, the Commonwealth met its Brady obligations.

## IV. CONCLUSION

After a thorough review of the petition for Writ of Habeas Corpus, the Second R&R, and Petitioner's objections to the Second R&R, I find that neither Petitioner's ineffective assistance of counsel nor his Brady claims succeed. Thus, I deny the petition for Writ of Habeas Corpus. An appropriate order follows.

s/Anita B. Brody

_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:	Copies **MAILED** on _____ to: